1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10   JOHN JEFFERY CARTER, as Trustee under          **Case No. 2:17-CV-01413-JAM-CKD**
     Declaration of Trust dated December 28, 1990,
11                                                   **JUDGMENT QUIETING TITLE TO**
              Plaintiff,                             **REAL PROPERTY**
12   v.
13   THE NATURE CONSERVANCY, et al.,

14            Defendants.
15
16   AND RELATED COUNTERCLAIM.
17
18
19          In accordance with the Stipulation for Entry Judgment Quieting Title ("Stipulation") between

20   Plaintiff and Counter-Defendant John Jeffery Carter, as Trustee under the Declaration of Trust dated

21   December 28, 1990 ("Plaintiff"), and Defendant and Counterclaimant The Nature Conservancy

22   ("TNC") in the above-captioned Action, and good cause appearing therefor,

23          IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

24          1.      For purposes of this Judgment, the term "Shaw Property" shall mean Plaintiff's real

25   property along the Sacramento River described in the Grant Deed recorded on February 22, 1996 as

26   Instrument Number 96-0838 in the Official Records of Glenn County, California, an accurate copy

27   of which is attached hereto as "Exhibit A" and incorporated herein.

28          2.      For purposes of this Judgment, the term "TNC Easement" shall mean the

                                                    1

1  conservation easement pursuant to the Deed of Conservation Easement recorded on December 30,

2  1991 as Instrument Number 91-6320 in the Official Records of Glenn County, California, an

3  accurate copy of which is attached hereto as "Exhibit B" and incorporated herein.

4      3.     For purposes of this Judgment, "Conservation Easement Property" shall mean that

5  portion of the Shaw Property affected by the TNC Easement.

6      4.     This Judgment establishes that, notwithstanding any contrary interpretation of the

7  TNC Easement, the easterly boundary of the Conservation Easement Property coincides with the

8  easterly boundary of the Shaw Property along the Sacramento River. TNC's title under the TNC

9  Easement is quieted to that easterly boundary. This Judgment establishes only the location of the

10  easterly boundary of the Conservation Easement Property as specified herein, and the TNC

11  Easement otherwise remains in full force and effect as originally written.

12      5.     Neither this Judgment nor the Parties' settlement pursuant to the Stipulation

13  constitute a waiver or relinquishment of any of the Parties' rights under the TNC Easement, and

14  TNC reserves all rights to comment on, object to, challenge in any public or private forum,

15  administrative process or tribunal, or in court proceedings, or otherwise comment on any current or

16  future proposed project or activity that may affect the TNC Easement.

17      6.     Under 28 U.S.C. § 1332, the Court has jurisdiction over the Action and shall retain

18  such jurisdiction to enforce this Judgment.

19      7.     There is no prevailing party in this Action, and no award for attorney's fees or costs

20  shall be entered in this Action pursuant to this Judgment, except that this Court may enter awards for

21  attorney's fees and/or costs in subsequent proceedings, if any, to enforce the terms of this Judgment

22  in accordance with the terms of the Stipulation.

23      8.     This Court retains jurisdiction over this Action to enforce the terms of this Judgment.

24  To avoid doubt, this Judgment applies to and is binding upon the Shaw Trust, John Jeffrey Carter, as

25  Trustee under Declaration of Trust dated December 28, 1990, The Nature Conservancy, and their

26  respective heirs, successors, affiliates, and assigns.

27      9.     The Court expressly finds and determines that the terms of this Judgment and the

28  Parties' settlement pursuant to the Stipulation are fair, reasonable, and in the public interest.

10. This Judgment constitutes a final judgment as to all claims and counterclaims asserted in this Action.

DATED: _September 10, 2018_

_____
HON. JOHN A. MENDEZ
UNITED STATES DISTRICT JUDGE

Exhibit A

WHEN RECORDED MAIL TO

Double Tree Properties
P.O.Box 1320
Hamilton City, Ca 95951

**MAIL TAX STATEMENT TO**

Same address as above

RECORDED IN OFFICIAL RECORDS
OF GLENN COUNTY, CALIFORNIA
AT THE REQUEST OF

**GLENN COUNTY TITLE CO.**

96 FEB 22 AM 10: 41

CAROLYN DAVIS
GLENN COUNTY RECORDER

FEE $13

3 Pages

96-0838

Order/Escrow No: 53806

# Grant Deed

The undersigned grantor(s) declare(s):
Documentary transfer tax is $ 0.00 _____.
( ) Computed on full value of property conveyed, or
( ) Computed on full value less value of liens and encumbrances remaining at time of sale
Tax Parcel No: 032-33-0-005-9     032-32-0-006-9

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
VAL K. SHAW and MICHAEL-ANNE SHAW, husband and wife

hereby GRANT(S) to
JOHN JEFFERY CARTER, trustee under declaration of trust dated December 28, 1990

the following described real property in the City of                              ( x ) Unincorporated area
County of Glenn                    , State of California, described as follows:

All that certain real property situate, lying and being in the County of Glenn,
State of California, described as follows:

A portion of the Capay Rancho in the County of Glenn, State of California,
described in the deed to Pacific Sugar Construction Company, dated January 30, 1906
and recorded February 20, 1906 in Book 22 of Deeds, at page 217, records of said
Glenn County as follows:
  (Continued)

Date: _February 7_ , 1996

STATE OF CALIFORNIA

COUNTY OF Glenn _____ } SS.

                                              Val K. Shaw

                                              Michael-Anne Shaw

On ____February 7, 1996____ before me, the undersigned, a Notary Public in and for said County and State, personally appeared

_____Val K. Shaw and Michael-Anne Shaw_____ , personally known
to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____Clara Larrabee_____
Notary Public in and for said County and State.

Clara Larrabee
Comm. #1023410
NOTARY PUBLIC CALIFORNIA
GLENN COUNTY
Comm Expires April 17, 1996

MAIL TAX STATEMENTS AS DIRECTED ABOVE (Notary Seal)

96-0838

**EXHIBIT A**

Enter legal description (continued)

BEING all that tract of land lying East of the center line of Stony Creek; South of the old Joe Billiou 'ands, West of the Sacramento River; and North of the lands of the Monroeville Orchards and being more particularly described as follows:

BEGINNING at a point in the center line of Stony Creek on the line dividing the Holly Sugar Company's and the Monroeville Orchard property, said point being North 89° 42' East 4461 feet from an 8" x 9" x 20" granite monument marked "P.S.C.C." in the Easterly line of the St. John and Jacinto Road (now the California State Highway Route #88) and being the Southwest corner of the Holly Sugar Company's holding in glenn County; thence up the center line of Stony Creek North 35° 45' West 438 feet; North 22° 25' West 2126 feet to the South line of the Joe Billiou lands; thence North 89° 42' East 12,523.8 feet along said South line to the bank of the Sacramento River from which point a Sycamore tree 24" in diameter bears 30° 30' East 136.6 feet; also an oak tree 56" in diameter bears South 86° 00' West 255.3 feet; thence down the West bank of the Sacramento River the following courses and distances:  (It is intended to convey the land to the bank of the Sacramento River, and the meanders shown by these courses and distances are inserted principally for the purpose of arriving at the area, but the bank of the river is the true line) South 43° 49' West 970.8 feet; South 26° 49' West 566.4 feet; South 17° 09' West 220 feet; South 3° 04' East 250 feet; South 5° 20' West 686.3 feet from which point on Oak tree 18" in diameter bears North 50° 30' West 140.8 feet; also an oak tree 30" in diameter bears South 62° 00' West 182.8 feet; thence leaving said bank and running parallel with the South line of said Billiou lands, it being the dividing line between the Holly Sugar Company's land and the Monroeville Orchards land South 89° 42' West 10,539.0 feet to the place of beginning.

SAVING AND EXCEPTING from the above parcel of land an undivided one-half interest in common of all oil, gas, asphaltum and other hydrocarbons as reserved in deed from Holly Sugar Corporation, a corporation to Richardson Mineral Springs, a corporation, dated December 3, 1943 and recorded January 25, 1944 in Book 166 of Official Records, at page 127.

ALSO EXCEPTING AND RESERVING a Life Estate in an undivided one-fourth of all oil, gas and minerals etc. as reserved in the deed from W. C. Newby et ux to LaVerne Borgquist et ux dated April 15, 1960 and recorded April 21, 1960 in Book 399 of Official Records, at page 363.

ALSO EXCEPTING THEREFROM a Life Estate in an undivided one-fourth interest in and to all oil, gas, minerals and other hydrocarbons, together with the right to remove the same, for benefit of Dorothy Borgquist as contained in the Deed fr m Dorothy Borgquist, Trustee of the Dorothy Borgquist Trust dated August 29 1985; Dorothy E. Borgquist and Richard Borgquist, as Co-Trustees of the Trust created under the Last Will and Testament of LaV: ne Elwood Borgquist, deceased to Val K. Shaw and Michael-Anne Shaw, husband and wire as Joint Tenants recorded December 30, 1991, Glenn County Recorder's File No. 91-6318.

(Continued)

A por..on of the oil, gas, minerals and other hydrocarbons rights as reserved in Glenn County Recorder's File No 91-6318 were Quitclaimed to Val K. Shaw and Michael-Anne Shaw, husband and wife, as their community property in Deed r..corded December 30, 1991, Glenn County Recorder's File No. 91-6322. (Said portion quitclaimed is described as follows: That portion of the above described property which is located between the top of the westerly bank of the Sacramento River and the easterly toe of the Sacramento River levee located on said property, as said levee exists in December, 1991, excepting therefrom all lan.. which are in agricultural production.)

ALSO EXCEPTING any portion of the described property within the natural bed of the Sacramento River below the line of ordinary high water where it was located prior to any artificial or evulsive changes in the location of the shoreline.

ALSO EXCEPTING THEREFROM all that p..ion contained in the Deed recorded 2/16/96 ,Glenn County Recorder's File No. 96-0756 to Sacramento San Joaqu.n Drainage District

Recording Requested By and
When Recorded Return To:

The Nature Conservancy
785 Market Street
San Francisco, CA 94103

RECORDED IN OFFICIAL RECORDS
OF GLENN COUNTY, CALIFORNIA
AT THE REQUEST OF
NORTH STATE TITLE CO.

1991 DEC 30 AM 11: 16


Pages

CAROLYN DAVIS
GLENN COUNTY RECORDER



91-6320

FEE $ 50.°° ~~

## DEED OF CONSERVATION EASEMENT

THIS DEED OF CONSERVATION EASEMENT is made this _27th_ day of December, 1991, by VAL K. SHAW and MICHAEL-ANNE SHAW, husband and wife ("Grantors"), and The Nature Conservancy, a District of Columbia non-profit corporation, with its national office at 1815 North Lynn Street, Arlington, Virginia 22209, and its California office at 785 Market Street, Third Floor, San Francisco, California 94103 ("Grantee" or the "Conservancy"), on the basis of the following facts and circumstances:

Recitals

A.   Grantors are the owners of certain real property (the "Property") in Glenn County, California, more particularly described in Exhibit 1, which is attached to and made part of this Deed of Conservation Easement by this reference.

B.   The Property, which is located on the Sacramento River, has important ecological values and provides significant relatively natural habitat for native plants and wildlife, including, without limitation, Great Valley mixed-riparian forest, a community which is rare in California.

C.   The protection of the Property will contribute to the protection of the ecological integrity of the Sacramento River

c:\easements\sactwshaw.eas-rka
Sacramento River (Shaw)
December 27, 1991

-1-

91-6320

**EXHIBIT B**

and its riparian forest, and thus protect a significant, relatively natural habitat for fish, wildlife, and plants.

   D.  Grantors, as owners of the Property, own the rights to identify, preserve and protect in perpetuity, and to restore the Property's significant natural habitat and ecological values, and Grantors desire and intend to transfer these rights to the Conservancy in perpetuity.

   E.  The State of California has recognized the importance of private efforts toward preservation of natural systems in the state by the enactment of Section 815 et seq. of the Civil Code.

   F.  The Conservancy is a private organization dedicated to the preservation and protection of natural areas and ecologically significant land for scientific, charitable and educational purposes, and is qualified under the terms of Section 815.3 of the Civil Code, and under Section 170(h)(3) of the Internal Revenue Code of 1954, as amended, to acquire and hold conservation easements.

   NOW, THEREFORE, in consideration of the mutual covenants set forth below, based on the common law, and further pursuant to Section 815 et seq. of the Civil Code, Grantor hereby grants to The Nature Conservancy, a District of Columbia non-profit corporation, its successors and assigns, as a gift, a perpetual conservation easement, on, over and across the Property, consisting of and subject to the rights and restrictions set forth below.

   1.  Purpose.  The purpose of this Conservation Easement is to preserve and protect in perpetuity the mixed riparian forest habitat and other natural features and values of the Property,

and to prohibit use of the Property for any purpose that, in the
Conservancy's judgment, would impair, degrade or interfere with
the protection of those natural features and value.

2. <u>Easement Documentation Report</u>. To accomplish the
purposes stated above, an Initial Baseline Report (the "Report")
has been compiled for the Property by an ecologist familiar with
the environs. A copy of the Report has been provided to each
party. Within one year of the date of this Deed, a more
comprehensive Easement Documentation Report ("EDR") will be
compiled for the Property. Grantor and the Conservancy will
review the EDR, to ensure that it is an accurate representation
of the physical and biological condition of the Property as of
the date of this Easement. The Report and EDR shall provide
information for monitoring, enforcement and restoration of the
Property. In the event a controversy arises with respect to the
nature of the biological and/or physical condition of the
Property, the parties may use any and all other relevant
documents, surveys, reports, and other information to assist in
the resolution of that controversy.

3. <u>Conservancy's Affirmative Rights</u>. The rights conveyed
to the Conservancy by this Conservation Easement are the
following:

    A. To identify, to preserve and protect in perpetuity
and to restore the significant relatively natural habitat for
plants, wildlife and ecosystems on the Property.

    B. To perform such activities on the Property as the
Conservancy reasonably determines are necessary or convenient to
carry out these rights granted by this Easement, including,
without limitation, the construction of fencing, the use of
prescribed fire, and the removal of non-native plants and
animals.

C.   To have access to the Property to carry out the rights herein granted, to study and make scientific observations of its ecosystems, and to determine that Grantors' activities are in compliance with the terms of this easement, all upon prior notice to Grantors and in a manner that does not unreasonably disturb the use of the Property by Grantors consistent with this easement, at the time of such entry.  The Conservancy shall also have the right of immediate entry to Grantors' Land if, in its sole judgment, such entry is necessary to prevent damage to or the destruction of the conservation values protected by this easement.

D.   For the foregoing purposes Grantors hereby convey to the Conservancy a right of access to the Property on, over and across adjacent property owned by Grantors and more particularly described in **Exhibit A to Exhibit 1** by means of such roads as Grantors shall designate from time to time.  Grantors shall have no duty to repair, maintain or restore such roads.

E.   To enjoin any activity on, or use of, the Property which is inconsistent with this Conservation Easement and to enforce the restoration of such areas or features of the Property as may be damaged by such activities.

4.   Grantors' Reserved Rights.  Grantors reserve to themselves only the following rights in and to the use of the Property; which Grantors agree to exercise in a manner consistent with the conservation purposes of this easement.

A.   All riparian water rights, together with (i) the right to divert such waters from the Sacramento River and to convey them on, over and across the Property for use on adjacent property owned by Grantors and (ii) the right to establish such diversion works and ditches as are necessary for the foregoing purposes, provided that the location, size and design of such

c:\easements\sactshaw.eas-rka
Sacramento River (Shaw)
December 27, 1991              -4-

91-6320

works and ditches shall be subject to the prior approval of the
Conservancy, as set forth in Section 5 below.

      B.   All oil, gas and mineral rights, lying below 500
feet of the surface of the Property, subject, however, to the
restrictions on the exploration for and extraction of minerals
set forth in paragraph 6(E).

      C.   The right for Grantors, their relatives and guest
to use the Property for picnicking, hiking and other passive
recreational purposes.

      D.   The right of access for Grantors, their guests and
relatives on, over and across the Property in order to exercise
the foregoing reserved rights.  Grantors also reserve the right
to remove or relocate any roads on the Property, provided such
removal or relocation does not materially interfere with the
Conservancy's right of access, and provided, further, that the
construction of any new roads shall require the prior approval of
the Conservancy, as set forth in Section 5 below.

      5.   <u>Notice by Grantors and Approval of Grantee</u>.  If
Grantors propose to undertake any activity as to which this
Easement expressly requires the prior approval of Grantee, or if
the exercise of a reserved right may adversely affect the
conservation purposes set forth in this Easement, Grantors shall,
prior to the commencement or undertaking of any such activity,
send the Conservancy written notice of their intention to
undertake or commence such activity.  Such notice shall inform
the Conservancy of all aspects of the proposed activity.  Such
notice shall be sent by first-class mail, postage prepaid,
addressed to The Nature Conservancy, 785 Market Street, Third
Floor, San Francisco, California 94103, with a copy to the
California Regional Attorney, at the same address, or such other
address as Grantors, their heirs, personal representatives, or

c:\easements\sactshaw.eas-rka
Sacramento River (Shaw)
December 27, 1991        -5-

91-6320

assigns may be from time to time informed of in writing by the
Conservancy.

The Conservancy shall have thirty (30) days from its receipt
of such notice to review the proposed activity and to notify
Grantor of any objections it may have. The Conservancy's
response to Grantors' notice shall be sent by first-class mail,
postage prepaid, to Grantors at ___*500 Cohasset #17*___

___*Chico Ca 95926*___

or to such other address as the Conservancy may from time to time
be informed of in writing by Grantors, with a copy to John
Jeffery Carter at P.O. Box 3606, Chico, California, 95927-3606.

The Conservancy's objections, if any, shall be based upon
the Conservancy's determination that the proposed activity is
inconsistent with the Conservation Easement. If in the
Conservancy's judgment it is possible that the proposed activity
can be modified to be consistent with this Conservation Easement,
the Conservancy's response shall inform Grantors of such
modification(s). Once such modification is made or the
Conservancy otherwise concurs with the matters set forth in
Grantors' notice, the proposed activity may thereafter be
conducted in a manner that is acceptable to the Conservancy.

Should the Conservancy fail to post its response to
Grantors' notice within thirty (30) days of its receipt of said
notice, the proposed activity shall automatically be deemed
consistent with the terms of this Conservation Easement, the
Conservancy having no further right to object to the activity
identified by such notice.

Grantors shall be under no liability or obligation for any
failure in the giving of notice required above with regard to any
activity undertaken by Grantors which is necessitated on account
of fire, flood, or other act of God, or any other cause beyond
the control of Grantors similar to those occurrences specified.

c:\easements\sactshaw.eas-rka
Sacramento River (Shaw)
December 27, 1991                     -6-

91-6320

6. <u>Inconsistent Uses</u>. The carrying out or permitting by Grantors of the following uses and practices on the Property, though not an exhaustive recital of inconsistent uses and practices, is inconsistent with this Conservation Easement, and shall be prohibited:

A. The change, disturbance, alteration, or impairment of or to the mixed riparian forest or other significant conservation interests on the Property, except as provided herein.

B. The conversion of native vegetation to new exotic cover species, and/or the introduction of non-native plant or animal species.

C. Hunting or trapping.

D. The grazing of domestic livestock.

E. Filling, excavating, dredging, mining, and the removal of soils, sand, gravel, rock, or other materials on or below the surface of the Property; provided, however, that Grantors shall have the right to explore for or extract oil, gas or hydrocarbons located below 500 feet of the surface of the Property only from a site or sites located off the Property.

F. The division, subdivision, or <u>de facto</u> subdivision of the Property.

G. The construction or placement of any buildings, camping accommodations, temporary living quarters of any sort, mobile homes, signs, billboards or other advertising materials, utility towers, or other structures.

H. The construction of roads or vehicle trails.

I. The use of all-terrain vehicles, motorcycles, or other motorized vehicles off of roads or travelways.

J. The dumping or other disposal of refuse or other unsightly or toxic materials.

K. The cutting, removal, or destruction of native vegetation.

c:\easements\eactshaw.oas-rka
Sacramento River (Shaw)
December 27, 1991

-7-

91-6320

L.   The application of biocides, defoliants, or
chemical fertilizers.

M.   Bank protection or any other manipulation,
diversion (except the diversion of waters provided for in Section
4, above) or other alteration of natural water courses, wetlands,
shorelines, or other bodies of water; any activity which may
destabilize the banks of any course or body of water; and any
uses or activities which would pollute, degrade, or drain the
Property's surface or sub-surface waters.

N.   The changing of the Property's topography by
placing on it any soil, dredging spoils, land fill, or other
material.

7.   <u>Remedies and Indemnification</u>.

A.   If the Conservancy determines that Grantors are in
violation of the terms of this Easement or that a violation is
threatened, the Conservancy shall give written notice to Grantors
of such violation and of any corrective action necessary to cure
the violation and, where the violation involves injury to the
Property resulting from any use or activity inconsistent with the
purpose of this Easement, to restore the portion of the Property
so injured.  If Grantors fail to cure the violation within thirty
(30) days after receipt of notice thereof from the Conservancy,
or under circumstances where the violation cannot reasonably be
cured within a thirty (30) day period, fail to begin curing such
violation within the thirty (30) day period, or to continue
diligently to cure such violation until finally cured, the
Conservancy may bring an action at law or in equity in a court of
competent jurisdiction to enforce the terms of this Easement,
including damages for the loss of scenic, aesthetic, or
environmental values, and to require the restoration of the
Property to the condition that existed prior to any such injury.
If the Conservancy, in its sole discretion, determines that

circumstances require immediate action to prevent or mitigate significant damage to the conservation values of the Property, the Conservancy may pursue its remedies under this paragraph without waiting for the period provided for cure to expire so long as Grantors are notified of any action.

If the Conservancy prevails in any action to enforce the terms of this Easement against Grantors, any costs incurred by the Conservancy including, without limitation, costs of suit and attorneys' fees, and any costs of restoration necessitated by Grantors' violation of the terms of this Easement shall be borne by Grantors. If Grantors prevail in any action to enforce the terms of this Easement, Grantors' costs of suit, including, without limitation, attorneys' fees, shall be borne by the Conservancy.

Enforcement of the terms of this Easement shall be at the discretion of the Conservancy, and any forbearance by the Conservancy to exercise its rights under this Easement in the event of any breach of any term of this Easement by Grantors shall not be deemed or construed to be a waiver by the Conservancy of such term or of any of the Conservancy's rights under this Easement. No delay or omission by the Conservancy in the exercise of any right or remedy upon any breach by Grantors shall impair such right or remedy or be construed as a waiver.

B.   Grantors hereby agree to indemnify, defend and hold harmless the Conservancy, its directors, officers, employees and agents, from and against any and all losses, claims, damages, penalties, liabilities, response costs and expenses (including all out-of-pocket litigation costs and the reasonable fees and expense of counsel) arising out of the manufacture, use, storage or disposal on the property of any hazardous or toxic substance, material or waste within the meaning of any applicable environmental statute, ordinance or regulation, including, without limitation, the costs of any clean up which may be

c:\easements\eactshaw.eas-rka
Sacramento River (Shaw)
December 27, 1991                    -9-

required by the United States Fish and Wildlife Service or other
assignee of the Conservancy as a condition to the Conservancy's
assignment of this Easement pursuant to Section 11, below.

8. <u>Covenant</u>. This Conservation Easement shall run with
and burden title to the Property in perpetuity, and shall be
binding upon Grantors, their heirs, personal representatives, and
assigns, and inure to the benefit of the Conservancy, its
successors and assigns.

9. <u>Taxes and Costs</u>. Grantors agree to pay any and all
real property taxes and assessments levied by competent authority
on the Property and on the easement herein granted, and to bear
all their costs of operation, upkeep and maintenance of the
Property, and Grantors do hereby indemnify the Conservancy
therefor.

10. <u>Access</u>. Nothing herein contained shall be construed as
affording the public access to any portion of the Property.

11. <u>Assignment</u>. The Conservancy may assign this easement,
provided that any such assignment shall provide that the
conservation purposes of this easement continue to be carried
out; and shall be made only to an organization qualified at the
time of transfer as an eligible donee under Internal Revenue Code
Section 170(h)(3) or its successor, or any regulations issued
thereunder.

Each successor or assign of any Grantor or Grantee (as the
case may be) by acceptance of a deed to the Property shall be
deemed to have consented to, reaffirmed and agreed to be bound by
all of the terms, covenants and conditions set forth herein.

c:\easements\sactshaw.aas-rks
Sacramento River (Shaw)
December 27, 1991                         -10-

91-6320

12. <u>Change in Conditions</u>.  The parties intend that the
conservation purposes of this Easement shall be carried out in
perpetuity.  In the event, however, that a later unexpected
change in the conditions of or surrounding the Property makes
impossible or impractical any continued use of the Property for
the conservation purposes described herein, and the restrictions
are extinguished by judicial proceeding, then, upon the
subsequent sale, exchange, or condemnation of the Property, the
Conservancy will apply its share of any and all proceeds
(determined as set forth below) received from such sale,
exchange, or taking in a manner consistent with the conservation
purposes of this Easement or for the protection of a "relatively
natural habitat of fish, wildlife, or plants or similar
ecosystem," as that phrase is used in P.L. 96-541, 26
USC 170(L)(4)(a)(ii), as amended and in regulations promulgated
thereunder.  The understanding and agreement of the Grantor and
the Conservancy regarding their respective rights and obligations
under the foregoing circumstances has been reduced to writing,
and a copy of such agreement may be obtained, for any legitimate
purpose, upon written request directed to the Conservancy at its
principal office, 1815 North Lynn Street, Arlington, Virginia
22209.  In the event of any sale, exchange, devise, or gift of
any property subject to this Conservation Easement, Grantors
agree to furnish a copy of such agreement to the party who
acquires the Property.

13. <u>Subsequent Transfers</u>.  Grantors agree to incorporate
the terms of this Easement or an express reference thereto in any
deed or other legal instrument by which they divest themselves of
any interest in all or a portion of the Property, including,
without limitation, a leasehold interest.  Grantors further agree
to give written notice to the Conservancy of the transfer of any
interest at least thirty (30) days prior to the date of such

c:\easements\sactshaw.eas-rka
Sacramento River (Shaw)
December 27, 1991                    -11-

91-6320

DEC 27 '91 10:10 NATURE CONSERVANCY                                    P.12-14

transfer. The failure of Grantors to perform any act required by this paragraph shall not impair the validity of this Easement or limit its enforceability in any way.

14. <u>Definition</u>. The terms "Grantors" and "Conservancy" or "Grantee" as used herein and any pronouns used in place thereof shall be deemed to include, respectively, the above named Grantors, their heirs, successors, personal representatives and assigns, and the Conservancy, and its successors and assigns.

15. <u>Severability</u>. If any provision of this Conservation Easement or the application thereof to any person or circumstance is found to be invalid, the remainder of the provisions of this Conservation Easement and the application of such provisions to persons or circumstances other than those as to which it is found to be invalid, shall not be affected thereby.

16. <u>Interpretation</u>. The provisions of this Conservation Easement shall be liberally construed to effectuate their purpose of preserving and protecting the wildlife habitat and other values described above. No remedy or election given by any provision in this Conservation Easement shall be deemed exclusive unless so indicated, but it shall, wherever possible, be cumulative with all other remedies at law or in equity. The parties acknowledge that each party and its counsel have reviewed and revised this Conservation Easement and that no rule of construction that ambiguities are to be resolved against the drafting party shall be employed in the interpretation of this Conservation Easement. In the event of any conflict between the provisions of this Conservation Easement and the provisions of any use and zoning restrictions of the State of California, County of Glenn, or any other governmental entity with jurisdiction, the more restrictive provisions shall apply. This

c:\easements\sactshaw.eas-rka
Sacramento River (Shaw)
December 27, 1991                        -12-

91-6320

Conservation Easement shall be interpreted in accordance with the laws of the State of California.

IN WITNESS WHEREOF, Grantors have executed this Deed of Conservation Easement as of the date first above written.

STATE OF CALIFORNIA      )
                         : ss.
County of San Francisco  )

On _____, 1991, before me, the undersigned, a Notary Public in and for said State, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged that they executed the same.

WITNESS my hand and official seal.

Signature _____

                                        (Notarial Seal)

My commission expires:

c:\easements\eactshaw.ess-rks
Sacramento River (Shaw).
December 27, 1991                    -14-

CAT NO. NN01500
FO 1910 (1/90)
(General Acknowledgment)

🎗 TICOR TITLE INSURANCE

STATE OF CALIFORNIA
COUNTY OF __Butte_____ } ss
On __December 27, 1991_____ before me, the undersigned, a Notary Public in and for said State,
personally appeared **VAL K. SHAW AND MICHAEL-ANNE SHAW**

personally known to me (or proved to me on the basis of
satisfactory evidence) to be the person(s) whose name(s)
is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s),
or the entity upon behalf of which the person(s) acted,
executed the instrument. )

WITNESS my hand and official seal

Signature _____

(This area for official notarial seal)

OFFICIAL SEAL
ROSEMARY SISNEROS
NOTARY PUBLIC · CALIFORNIA
SACRAMENTO COUNTY
My commission expires Feb. 13, 1993

91-6320

WILDLIFE PRESERVATION EASEMENT

DESCRIPTION

GLENN COUNTY A. P. No. 32-33-05

That portion of the real property described in the attached Exhibit "A"
(recorded in the office of the Glenn County Recorder under Serial No. 89-2201)
which is located between the top of the westerly bank of the Sacramento River
and the easterly toe of the Sacramento River levee located on said property,
as said levee exists in December, 1991, excepting therefrom all lands which
are in agricultural production.

Description prepared by *ROLLS, ANDERSON & ROLLS*, Civil Engineers.

Ray O. Rolls,   R.C.E. 18036   Exp. 06/30/93

DOCUMENTARY TRANSFER TAX $ .....................
☐ COMPUTED ON FULL VALUE OF PROPERTY CONVEYED, OR
☐ COMPUTED ON FULL VALUE LESS LIENS & ENCUMBRANCES
  REMAINING THEREON AT TIME OF SALE.

North State Title Company -- Berry
Signature of declarant or agent determining tax — firm name

91-6320

EXHIBIT "A"

All that certain real property situate, lying and being in the County of Glenn, State of California, described as follows:

A portion of the Capay Rancho in the County of Glenn, State of California, described in the deed to Pacific Sugar Construction Company, dated January 30, 1906 and recorded February 20, 1906 in Book 22 of Deeds, at Page 217, records of said Glenn County as follows:

Being all that tract of land lying East of the center line of Stony Creek; South of the old Joe Billiou lands; West of the Sacramento River; and North of the lands of the Monroeville Orchards and being more particularly described as follows:

Beginning at a point in the center line of Stony Creek on the line dividing the Holly Sugar Company's and the old Monroeville Orchard property, said point being North 89° 42' East 4461 feet from an 8" x 9" x 20" granite monument marked "P. S. C. C." in the Easterly line of the St. John and Jacinto Road (now the California State Highway Route #08) and being the Southwest corner of the Holly Sugar Company's holdings in Glenn County; thence up the center line of Stony Creek North 35° 45' West 438 feet; North 22° 25' West 2126 feet to the South line of the old Joe Billiou lands; thence North 89° 42' East 12,523.8 feet along said South line to the Bank of the Sacramento River from which point a Sycamore tree 24" in diameter bears North 30° 30' East 186.6 feet; also an Oak tree 56" in diameter bears South 86° 00' West 255.3 feet; thence down the West bank of the Sacramento River the following courses and distances: (It is intended to convey the land to the bank of the Sacramento River, and the meanders shown by these courses and distances are inserted principally for the purpose of arriving at the area, but the bank of the river is the true line) South 43° 49' West 970.8 feet; South 26° 49' West 566.4 feet; South 17° 09' West 220 feet; South 03° 04' East 250 feet; South 05° 29' West 686.3 feet from which point an Oak tree 18" in diameter bears North 50° 30' West 140.8 feet; also an Oak tree 30" in diameter bears South 62° 00' West 182.8 feet; thence leaving said bank and running parallel with the South line of said Billiou lands, it being the dividing line between the Holly Sugar Company's land and the Monroeville Orchards land South 89° 42' West 10,539.0 feet to the place of beginning.

Saving and Excepting from the above parcels of land an undivided one-half interest in common of all oil, gas, asphaltum and other hydrocarbons as reserved in deed from Holly Sugar Corporation, a corporation to Richardson Mineral Springs, a corporation, dated December 3, 1943 and recorded January 25, 1944 in Book 166 of Official Records, at Page 127.

END OF DOCUMENT  91-6320